Kevin KUBIAK, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 49A04–8606–PC–00176.

Court of Appeals of Indiana,
Fourth District.

June 1, 1987.

Donald W. Pagos, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Kevin Kubiak appeals the denial of his Petition for Post-Conviction Relief which alleged his guilty plea was not intelligently and voluntarily entered, that the court erroneously imposed consecutive sentences, and that his aggregate sentence of 100 years is manifestly unreasonable.

We affirm Kubiak's conviction but remand to the trial court to modify his aggregate sentence of 100 years to 90 years.

## FACTS

On December 7, 1981 Kevin Kubiak was charged by Information with four crimes: Kidnapping, a Class A Felony; Criminal Deviate Conduct, a Class A Felony; Rape, a Class A Felony; and Robbery, a Class B Felony. The charges arose from the abduction at knifepoint on December 6, 1981 of a 20 year old woman in the Washington Square Shopping Center parking lot in Indianapolis, Indiana. The victim was driven in her car a short distance and then raped and forced to perform oral sex. The victim was robbed of a calculator, her purse and its contents, and her car keys. She was later returned to the shopping center parking lot, reported the crime to police, and was treated at a hospital. Later that evening, the victim saw Kubiak at a restaurant, identified him to the police, and he was apprehended.

On September 13, 1982, a jury trial began as to all charges. During voir dire, Kubiak informed his counsel that he wished to enter a guilty plea. The trial court then interrupted the jury selection and conducted a guilty plea hearing. Kubiak pled guilty to all charges without a plea agreement, and the trial court accepted Kubiak's guilty plea. On October 13, 1983, the court sentenced Kubiak to the presumptive term, 30 years and 10 years respectively, for the three Class A and one Class B felonies and then ordered the sentences to be served consecutively, 100 years total, due to the aggravating factors present. The court specified three statutory criteria under IND.CODE 35-50-1-2 as aggravating factors: 1) defendant in need of rehabilitative treatment that can best be provided by a penal facility; 2) victim suffered mental injury and abuse; 3) imposition of a reduced sentence would depreciate the seriousness of the crime.

### Issues

Kubiak presents three issues for consideration on appeal:

I. Whether Kubiak's four guilty pleas were voluntarily and intelligently made.

II. Whether the trial court abused its discretion in ordering Kubiak to serve his four terms of imprisonment consecutively by failing to adequately state the aggravating circumstances relied on to impose the consecutive sentences of 100 years.

III. Whether Kubiak's presumptive sentences of 100 years total for three Class A and one Class B felonies is manifestly unreasonable.

## DECISION

I. *Intelligent and Voluntary Guilty Plea*

■ Kubiak argues the trial court, at the guilty plea hearing, failed to inform him of the possibility of increased sentence because of prior convictions as required by I.C. 35-35-1-2. Kubiak asserts the trial court also misadvised him regarding the possibility of consecutive sentences. He argues that because his guilty plea was made *before White v. State* (1986), Ind., 497 N.E.2d 893, this court should limit *White* to prospective application. Alternately, Kubiak maintains these two failures to comply with I.C. 35-35-1-2 require his four convictions be vacated under the *White* standard of review.

The State asserts that Kubiak had no prior felony convictions and his sentence was not enhanced on that basis. The State maintains that Kubiak was adequately advised by the trial court that if aggravating circumstances were present, his sentences could be enhanced by requiring them to be served consecutively. The State contends the entire record reveals Kubiak was meaningfully advised of his rights under the *White* standard of review.

In *White, supra,* our supreme court articulated a new standard of review for assessing collateral attacks on criminal convictions:

"To decide a claim that a plea was not made voluntarily and intelligently, we will review all the evidence before the court which heard his post-conviction petition, including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record.

A petitioner who claims that his plea was involuntarily and unintelligent but can only establish that the trial judge failed to give an advisement in accordance with § 35–35–1–2 has not met his burden of proof. He needs to plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with § 35–35–1–2(a) rendered his decision involuntary or unintelligent. Of course, unless the record reveals that the defendant knew he was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* will require that his conviction be vacated."

*White,* 497 N.E.2d at 895.

While announcing the new rule, the supreme court did not address the issue of whether it should be limited to prospective application. That issue is a separate and distinct one which was not considered by the court and resolved until its later opinions in *Simpson v. State* (1986), Ind., 499 N.E.2d 205; *Reid v. State* (1986), Ind., 499 N.E.2d 207, and *Merriweather v. State* (1986), Ind., 499 N.E.2d 209. Since *White,* the Supreme Court has applied its new standard to defendants whose guilty pleas were entered before *White* was decided. Because the Supreme Court has applied the *White* standard retroactively, we must do the same.

Under *White,* even if Kubiak established that the trial judge failed to give an advisement under I.C. § 35–35–1–2, he must fur-

ther plead "specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with 35–35–1–2(a) rendered his decision involuntary or unintelligent." Kubiak has presented no specific facts which show his decision to plead guilty would have been changed if he received further advisements from the court regarding the possibility of consecutive sentences due to prior convictions.

## II. *Consecutive Sentences*

■ The trial court sentenced Kubiak to the presumptive term of 30 years for each of the three Class A felonies, and to the presumptive term of 10 years for the Class B felony. The court explained its reasoning for imposing a consecutive sentence totaling 100 years at the sentencing hearing:

"I have determined that there are certain factors to be aggravating in this matter. That is, defendant is in need of correctional or rehabilitative treatment that can only be provided by his commitment to a penal facility, imposition of a reduced sentence would depreciate the seriousness of the crime. I will make more comment upon that in a minute. Additionally, even though the victim as you said, Mr. Alden, was not physically injured there certainly was an injury to the victim's mental condition. Having done that the court will make determination then that the sentences will run consecutively. So therefore, you will receive thirty, thirty, thirty, ten consecutive term of imprisonment of one hundred years. The victim of this crime was not only the individual that was referred by Ms. Beltz. Its every woman who lives in the metropolitan area of Indianapolis. Every woman that wants to go out shopping has to think about Kevin Kubiak. That's who the victims of this crime are. And it is for that reason these terms are going to run consecutively. Its for that reason you need to go to prison for one hundred years." [R. Vol 1, p. 176–177].

Kubiak challenges the adequacy of the court's findings of aggravating circum-

stances to justify the imposition of consecutive sentences.

In *Smith v. State* (1985), Ind., 474 N.E.2d 71, the supreme court noted the following principles applicable to enhancement of sentences:

"Ind.Code § 35–50–1–2(a) provides that '... the Court shall determine whether terms of imprisonment shall be served concurrently or consecutively.' Consequently, except where the statute deems it mandatory, the imposition of consecutive sentences is committed to the trial court's discretion, subject to the requirement that it set forth its reasons for imposing consecutive sentences. *Sage v. State* (1981), 275 Ind. 699, 419 N.E.2d 1286. A trial court may, upon consideration of relevant facts and information, increase the basic penalties, impose consecutive sentences or both. *Mott v. State* (1980), 273 Ind. 216, 402 N.E.2d 986. Furthermore, the same reasons may be used to justify both an increase of the presumptive sentence and the imposition of consecutive sentences. See *Bish v. State* (1981), Ind., 421 N.E.2d 608.

However, it is clear, that in every case where increased sentences are imposed the record must show that careful consideration commensurate with the denial of liberty involved has been given to the defendant. Due care must be taken to demonstrate a thorough and thoughtful sentencing decision supported by specific and detailed reasons and an indication that the court has considered the goal of rehabilitation. The record must show that the determination of the increased sentence was based upon a consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved and the relation of the sentence imposed to the objectives which will be served by that sentence. *Abercrombie v. State* (1981), 275 Ind. 407, 417 N.E.2d 316. As long as the imposition of consecutive sentences is supported by specific and detailed reasons and an indication that the court has considered the goal of rehabilitation, it will not constitute cruel and unusual punishment."

*Smith, supra*, 474 N.E.2d at 73–74.

In this case, the trial court identified no mitigating factors after discussion of each mitigating factor listed in I.C. 35–4.1–4–7 (Burns 1979 Repl.) (now I.C. 35–38–1–7). The court identified three aggravating factors: 1) defendant is in need of correctional or rehabilitative treatment that can only be provided by his committment to a penal facility; 2) imposition of a reduced sentence would depreciate the seriousness of the crime; 3) victim's mental injury and abuse. The court also discussed the need for correctional treatment to ensure Kubiak's segregation from society, the fear engendered in all women by Kubiak's conduct, and the need to protect the public. Implicit in this discussion is the court's belief that the nature of these crimes is severe and that Kubiak would likely repeat these crimes in the future. The court considered, and dismissed, the possibility of Kubiak's successful rehabilitation.

We find the trial court adequately stated the aggravating circumstances relied on to impose consecutive sentences and that the court considered the goal of rehabilitation, and thus no abuse of discretion resulted from imposition of consecutive sentences.

### III. *Manifestly Unreasonable Sentence*

■ Kubiak argues his aggregate sentence of 100 years total for kidnapping, rape, criminal deviate conduct, and robbery is manifestly unreasonable considering the particular facts of the offense and the offender. He asserts that because his crime did not cause physical injury to the victim and he had a minimal criminal record and no previous incarceration, the consecutive sentencing is manifestly unreasonable. The State responds that the imposition of consecutive sentences was reasonable, and within the discretion of the trial court.

The Indiana Supreme Court recently established the analytical framework for appellate review of sentences, in light of constitutional provisions and Indiana Rules for

Appellate Review of Sentences, Rule 2,[1] in *Fointno v. State* (1986), Ind., 487 N.E.2d 140. The court adopted the two-step appellate procedure first pronounced by the Indiana Court of Appeals in *Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, *trans. denied:*

> "We perceive a two-step appellate procedure in this area. We will review a sentence on appeal only when at first blush the sentence imposed appears to be 'disproportionate', that is, 'manifestly unreasonable in light of the nature of the offense and the character of the offender.' If after review we determine 'no reasonable person could find such sentence appropriate to the particular offense and offender', we will reverse the sentence on appeal so as to make such sentence appropriate."

469 N.E.2d at 8.

Since a 100 year aggregate sentence for the crimes of kidnapping, rape, criminal deviate conduct, and robbery does appear disproportionate at first blush—as did a 104 year aggregate sentence for similar crimes in *Fointno*—we must next determine whether the sentence imposed is one which no reasonable person could find appropriate in light of the crime involved and the character of Kubiak. The Supreme Court addressed the appellate court's function under *Fointno* in *Spranger v. State* (1986), Ind. 498 N.E.2d 931 and stated:

> "If upon initial review of the record the reviewing court determines the sentence may be manifestly unreasonable, the court should undertake a thorough analysis of all the factors in the record relevant to sentencing and then determine whether no reasonable person could find such sentence appropriate to the particular offense and offender."

*Spranger*, 498 N.E.2d at 949.

The evidence shows Kubiak abducted his 20 year old female victim at knifepoint as she was leaving her car in Washington Square parking lot to go to her job inside the shopping mall. Kubiak drove the victim's car a short distance from the mall, then raped her and forced her to perform oral sex. Kubiak took the victim's purse, its contents and her car keys. He later returned her and her car to the parking lot.

The record shows Kevin Kubiak was 23 years old when the instant offenses were committed. Kubiak was born in South Bend and came to Indianapolis four years ago. He was the last of four children born to Maxine Henry. Maxine had been married four times and was separated from her husband. Kubiak did not get along well with his step-father and had never knew his real father. Kubiak appeared to be the product of a very unstable home environment and was not close to any of his family members. He dropped out of high school in tenth grade due to lack of interest and his employment history consisted only of unskilled jobs. Kubiak completed a three month emergency medical technician course. His education and employment goals were to complete high school and obtain further medical training. At 18, Kubiak married Pam McQueen. He divorced in 1978 and was ordered to pay $25.00 in support of his daughter, Mandy, from that marriage. Pam McAdams, the woman Kubiak lived with before his incarceration, filed a paternity suit against him for her son, Kevin McAdams.

In *Fointno v. State, supra,* the defendant was convicted of rape, criminal deviate conduct, confinement, robbery, and intimidation and his sentence of 104 years was found manifestly unreasonable on appeal and reduced to 80 years. The court described the nature of the offense as follows:

> (2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.

---

1. The Rules of Appellate Review of Sentences, Rule 2, provide:

    Rule 2. Scope of Review

    (1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

"The victim testified that she had taken her seven-year-old daughter to a hospital emergency room for treatment of an earache. The physician there gave her a prescription which the victim had filled at a drugstore at about 2:00 a.m. When the victim returned to her van and started to drive away, a man whom the victim later identified as Defendant approached the van, pointed a small pistol at her and ordered her to let him inside. The man then drove the van to a nearby apartment complex parking lot. There he instructed the victim to tell her child to lie on a back seat and turn her head away. During the following two (2) hours the man repeatedly required the victim to submit to a variety of sexual acts. He also took $42.00 from her and implied that he would harm her if she reported the assault to authorities."

487 N.E.2d at 143.

The court found the total sentence of 104 years manifestly unreasonable in light of two mitigating factors evident in the record, and not considered by the trial court, including 1) defendant had no criminal record prior to this assault; and 2) defendant had served as an Anderson fireman for 10 years with no serious problems or disciplinary citations. The court noted that the defendant did not beat, wound, or otherwise severely brutalize the victims except as inherent in the commission of the crimes. *Fointno, supra,* 487 N.E.2d at 148. Here, as in *Fointno,* the trial court did not consider two factors which are apparent from the record: (1) defendant did not beat, wound, or otherwise severely brutalize the victim except as inherent in the commission of the crimes, and (2) the defendant's prior criminal activity.

Our supreme court explained the effect of both the presence of collateral brutality and its absence in *Fointno:*

"A third factor we consider, but nevertheless approach with much sensitivity for the victims of any sexual assault, is that Defendant did not beat, wound or otherwise severely brutalize the victims except as is inherent in the commission of the crimes. *While the absence of such conduct does not in any way lessen the severity of the crimes as such, and thus does not constitute a mitigating factor justifying a reduction or suspension of the presumptive sentence, the presence of aggravated brutality distinguishes the defendants who commit such acts and justifies a substantially aggravated term where it is present.* We do not by this observation debase the seriousness of these crimes themselves. Nor do we suggest that the absence of collateral brutality prevents the imposition of an enhanced sentence. Nevertheless, a rational sentencing scheme should punish more severely those who brutalize the victims of their crimes. (citations omitted)." (emphasis added).

*Fointno,* 487 N.E.2d at 148.

We agree with Kubiak that the record shows he did not beat, wound, or otherwise severely brutalize his victim except as inherent in the commission of the kidnapping, rape, criminal deviate conduct and robbery crimes to which he pled guilty. However, the absence of collateral brutality does not lessen the severity of these crimes and is not a mitigating factor justifying a reduction or suspension of the presumptive sentence. Likewise, we conclude the absence of collateral brutality, standing alone with no other mitigating circumstances, is not sufficient to require as a matter of law that sentences be served concurrently. The trial court need not specify the aggravating or mitigating factors, nor balance these competing factors, to order either the presumptive sentence or that two or more sentences be served concurrently. Under our sentencing statutes, the trial court must specify both mitigating and aggravating circumstances to justify either a lesser or greater sentence, or to order the sentences be served consecutively. Within this framework, we conclude the mere absence of collateral brutality is not a mitigating factor and does not mandate sentences be served concurrently.

Kubiak next argues he has a "minimal" criminal record and no previous incarceration, therefore this mitigating factor, in

addition to the absence of collateral brutality, makes his consecutive sentences manifestly unreasonable. I.C. 35–38–1–7(c) provides the court may consider the following factor as mitigating:

"(6) The person has no history of delinquency or criminal activity, or he has led a law-abiding life for a substantial period before commission of the crime."

I.C. 35–38–1–7(b) provides the court may consider the following factor as aggravating:

"(2) The person has a history of criminal or delinquent activity."

The trial court did not, on the record, consider whether Kubiak's criminal activity was either a mitigating or an aggravating factor. Our Supreme Court has held a trial court's consideration of a defendant's criminal history is not limited to felonies but may include misdemeanor and other criminal activity which has *NOT* been reduced to a conviction. *Hoelscher v. State* (1984), Ind., 465 N.E.2d 715 (in criminal deviate conduct case, the trial court properly consider defendant's three previous misdemeanor convictions in Florida as a "history of criminal activity" and an aggravating circumstance); *Randall v. State* (1983), Ind., 455 N.E.2d 916; *Griffin v. State* (1980), 273 Ind. 184, 402 N.E.2d 981. Therefore, Kubiak's past criminal activity, including convictions for traffic offenses, disorderly conduct, battery, and failure to appear as well as a case pending for Kidnapping (2 counts, mother and 3 year old daughter), Rape, Criminal Deviate Conduct and Robbery, was a proper factor which the trial court failed to consider. While Kubiak maintains his prior criminal activity is "minimal", we conclude his past criminal history was an aggravating circumstance. *See also, Guenther v. State* (1986), Ind. App. 495 N.E.2d 788 (in child molesting case, defendant's prior criminal activity, including two counts of check deception, disorderly conduct, and driving while intoxicated plus minor traffic offenses, was properly considered by trial court as an aggravating circumstance.)

We are left with the difficult task of determining whether Kubiak's consecutive sentences are manifestly unreasonable. *Fointno* provides guidance by comparison.[2]

---

**2.** Fointno was sentenced as follows:

| count(s) | class | term | consecutive or concurrent | total |
|---|---|---|---|---|
| 1 Rape | A | 30+10 | consecutive | 40 |
| 2 Criminal Deviate Conduct | A | (3)×30+10 | 3 counts concurrent with each other; consecutive to rape. | 40 |
| 2 Confinement (now Kidnapping a Class A felony) | B | (2)×10 | 2 counts concurrent with each other; consecutive to rape and criminal deviate conduct. | 10 |
| 1 Robbery | B | 10 | consecutive | 10 |
| 1 Intimidation | D | 2×2 | consecutive | 4 |
| | | 154 | | 104 |

Kubiak was sentenced as follows:

| count(s) | class | term | consecutive or concurrent | total |
|---|---|---|---|---|
| 1 Kidnapping | A | 30 | consecutive | 30 |
| 1 Rape | A | 30 | consecutive | 30 |
| 1 Criminal Deviate Conduct | A | 30 | consecutive | 30 |
| 1 Robbery | B | 10 | consecutive | 10 |
| | | 100 | | 100 |

The nature of the offenses in *Fointno* and the instant case are similar in that they involve abduction, rape, sodomy and robbery. Here, a 20 year old woman victim was abducted at knifepoint from a shopping area parking lot, driven a short distance away, raped and sodomized by the defendant but sustained no permanent physical injuries, was robbed and then returned to the parking lot. In *Fointno*, the nature of the offense was more severe because of the multiple counts of criminal deviate conduct and because of the abduction of the victim's seven year old daughter and her presence in the van during the commission of the crimes. On the other hand, the *character* of the defendants in these two cases was not as similar as the nature of their crimes. Fointno had served as an Anderson fireman for ten years with no serious problems or disciplinary actions and had *no* record prior to the assault. Kubiak, in contrast, was a younger man who has held only unskilled jobs and had a past criminal record including convictions for traffic offenses, disorderly conduct, battery, and failure to appear, as well as a second series of felony charges of kidnapping (a mother and her three year old daughter), rape, criminal deviate conduct and robbery pending.

The supreme court concluded in *Fointno:*
"We recognize reasonable minds may differ on what sentence is appropriate in any given case. This is particularly true where multiple sentences are imposed for several offenses committed in one criminal episode. It is for this reason that the 'manifestly unreasonable' rule of appellate review was adopted. Given the degree of subjectivity that cannot be eliminated in the sentencing process, it would be inappropriate for us merely to substitute our opinions for those of the trial judge.

In view of the enhancements imposed upon the rape and deviate conduct counts and the provision for consecutive sentences as between them, amounting to a sentence of 80 years upon those four offenses, and further considering the reduced significance of the confinement counts and the robbery offenses when compared with the others and regarded as parts of the whole episode, we are of the opinion that the addition of twenty-four additional years evidences a vindictiveness proscribed by Art. I § 18 of our State Constitution, *supra* and would not be found appropriate to the offenses and offender with which we are here concerned. The sentences in toto, are, therefore found by us to be manifestly unreasonable.

The convictions are affirmed, and this cause is remanded to the trial court, which is instructed to modify the sentencing order to require that the sentences upon the confinement, robbery and intimidation convictions be served concurrently with one another and concurrently with the 80–year sentences upon the rape and deviate conduct convictions."

*Fointno,* 487 N.E.2d at 149.

We read *Fointno* as imposing an 80 year maximum sentence (a greater sentence evidences a vindictiveness proscribed by Art. I § 18 of our Constitution) upon a defendant who commits rape, several acts of criminal deviate conduct, abduction of a mother and her minor child, robbery and intimidation in one criminal episode where the victim is not beaten, wounded, or otherwise severely brutalized except as is inherent in the commission of the crimes and where the defendant has no prior criminal record and has been employed in a service profession with no disciplinary problems for a substantial period of time before the commission of the crimes. With *Fointno* in view, we conclude the aggregate sentences of 100 years total for the four offenses here is not appropriate to the offense and the offender and is therefore manifestly unreasonable. First, the robbery charge as in *Fointno* has reduced significance compared to the Class A felonies and should be ordered served concurrently. The remaining 90 year sentence (composed of 3 consecutive presumptive Class A felonies) is admittedly 10 years in excess of the sentence in *Fointno*. However, in view of Kubiak's criminal record and pending serious charges of kidnapping of a mother and her

3 year old child, rape, and criminal deviate conduct, we find justification to require Kubiak serve his three 30 year presumptive sentences upon the kidnapping, rape, and criminal deviate conduct convictions consecutively.

Reversed and remanded for reduction of aggregate sentence to 90 years.

CONOVER, P.J., and YOUNG, J., concur.