**Paul D. WOODCOX, Appellant,**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee.**
**(Plaintiff Below).**

**No. 15S00–8912–CR–890.**

Supreme Court of Indiana.

May 27, 1992.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Judge.

Paul D. Woodcox (Appellant–Defendant below) files this direct appeal from his convictions for rape, as a class A felony, attempted murder, as a class A felony, confinement, as a class B felony, and the finding that he was an habitual offender. He alleges that the trial court erred by:

(1) Failing to instruct the jury on the element of specific intent for the crime of attempted murder;

(2) Refusing to give two instructions tendered by Woodcox;

(3) Violating Woodcox's constitutional rights by imposing sentences based upon a pre-sentence investigation report that did not contain mandatory statutory provisions;

(4) Imposing maximum consecutive sentences;

(5) Sentencing Woodcox for rape as a class A felony and confinement as a class B felony, because those felonies were aggravated based upon the same allegation of serious bodily injury contained in the attempted murder charge; and

(6) Admitting evidence and testimony regarding DNA testing performed by the Federal Bureau of Investigation ("FBI").

We affirm Woodcox's convictions and sentences for rape as a class A felony, confinement as a class B felony, and the determination that he was an habitual offender. We reverse the conviction for attempted murder and remand for a new trial.

The facts necessary for resolution of the issues follow. The victim and her friend, Darlene, were in a Cincinnati bar when Darlene introduced her to Woodcox. Eventually, the victim and Darlene invited Woodcox and two other men to join them for a party. The victim wanted Darlene to ride with her, but Darlene wanted to ride in another car. The victim drove her car with Woodcox, whom she had never seen prior to that night, accompanying her as a passenger. The victim followed and accidently ran into the back of the car in which Darlene and the others were riding. When the victim got out to inspect the damage, the other car drove away. At that point, Woodcox, still in the passenger seat, started giving directions to the victim. After a period of time, Woodcox directed the victim to pull over, took her car keys, and instructed her that he was going to take over driving the car. The victim acquiesced, but was uncomfortable and afraid. She repeatedly asked Woodcox to return her keys, but Woodcox merely responded that they were going to Indiana. She argued with him and, eventually, he pulled the car over and began strangling her to the point at which she was unable to breathe. He told her to "shut up" and threatened to hurt her if she didn't comply. As they continued to drive, however, she began to argue again. In response, Woodcox again pulled over and strangled her, instructing her that he would not hurt her if she "shut up."

Eventually, after several of these episodes, Woodcox drove down a gravel road in a remote area in Dearborn County,

Indiana. He stopped the car and began to strangle the victim and hit her in the face. He threatened to kill her if she didn't do what he wanted. He ordered her to climb into the back seat of the car and remove her clothing. She complied because she was in fear for her life if she did not comply with his demands. While she was in the back seat of the car, Woodcox engaged in vaginal intercourse with her. When he was done, he began to beat and strangle her again until she lost consciousness.

The victim's next memory was of awakening, covered with blood, in a wooded area. She crawled, walked, and ran from the area, periodically passing out, regaining consciousness and continuing to flee. She was discovered passed out in the yard of a house at approximately 9:45 a.m. on Sunday morning five hours after commission of the crime. She was taken by helicopter to the University of Cincinnati Hospital where she was determined to be suffering from hypothermia. She had several lacerations on the top of her head, six lacerations down the side of her face, and a tearing laceration on the right side of her mouth. She had a great deal of facial swelling and blood around her right eye with damage to her right eardrum. She had abrasions and contusions around her neck and on her upper right arm, as well as on her right lower ribcage. The tips of her third and fourth fingers on her right hand were crushed and nearly torn off, requiring subsequent amputation. She had suffered significant blood loss as well as liver and muscle damage. While in the hospital recovering from her injuries, she selected the defendant's photograph from a photo array as a photograph of the man who had raped and beaten her.

The scene of the rape was not located until the day after the victim was discovered. Evidence was recovered from the scene by police evidence technicians. The victim's car was located at a body shop within approximately 200 yards of a house from which Woodcox's brother was in the process of moving. Police evidence technicians recovered evidence from the car as well. Evidence including samples of the victim's and the defendant's blood and hair were sent to the FBI laboratory in Washington, D.C., for standard analysis as well as for "DNA" analysis and testing.

Additional evidence at trial revealed that Woodcox confided to his brother-in-law on the day after the occurrence that he had met a woman in a bar the previous night. He also said that he had had sex with her and that she had freaked out and threatened to prosecute him for rape. Woodcox admitted to his brother-in-law that he had beaten and killed the woman and had thrown her body over an embankment. Woodcox asked his brother-in-law if fingerprints could be recovered from a rock and if proof could be found that he had had sex with the woman.

After his arrest, Woodcox admitted being with the victim and having sex with her. He also admitted beating her, but only with his fists. Woodcox was found guilty of attempted murder, a class A felony, rape, a class A felony, confinement, a class B felony, and was determined to be an habitual offender. He was sentenced to 50 years on count 1, 50 years on count 2, 10 years on count 3, and 30 years for being an habitual offender. All of the sentences were to run consecutively.

I.  *Attempted Murder Instruction*

Woodcox contends that the trial court's instructions to the jury concerning the crime of attempted murder were deficient because they failed to instruct the jury that it must find that he had a specific intent to kill the victim in order to find him guilty of attempted murder. He admits that he neither objected to the instructions nor tendered proper instructions on this omitted element, but, nevertheless, argues that the trial court's instructions constitute fundamental error pursuant to *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507, and subsequent cases through and including *Spradlin v. State* (1991), Ind., 569 N.E.2d 948. We agree that the court's instructions on the attempted murder charge were deficient, and that such deficiency constitutes fundamental error re-

quiring reversal of the attempted murder conviction.

The court instructed the jury on the general statutory definition of murder as a "knowing or intentional" killing and of the statutory definition of attempt. In that same instruction, the court specifically instructed the jury as follows:

To convict the defendant of Attempted Murder, the State must have proved each of the following elements:

The defendant

1. knowingly
2. threatened to kill Amber Androne and did choke her and strike and beat at and against her face, head, torso and hand with a certain blunt object and with his fists
3. that said conduct was a substantial step toward the commission of the crime of Murder

If the State failed to prove each of these elements, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of Attempted Murder, a Class A felony.

Recently, in *Spradlin v. State*, we traced the history of this Court's rulings on the requirement that the jury must be informed that in order to convict for attempted murder, it must find that the defendant had a specific intent to kill the victim. *See Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507; *Smith v. State* (1984), Ind., 459 N.E.2d 355, *Abdul–Wadood v. State* (1988), Ind., 521 N.E.2d 1299. We believe that the law is clear that it is fundamental error to fail to instruct the jury on an essential element of the crime of attempted murder, viz., an intent to kill the victim.

The State acknowledges this requirement, but maintains that the jury was adequately instructed on this element because of the court's preliminary instructions, as well as the final instruction, which statutorily defined murder and attempt. Unlike *Jackson v. State* (1991), Ind., 575 N.E.2d 617, and *Allen v. State* (1991), Ind., 575 N.E.2d 615, where we held that fundamen-

tal error was not committed where the jury was instructed that the State must prove that the defendant was "attempting to kill" the victim at the time that the defendant shot the victim, no instruction in the present case sufficiently conveyed the State's burden to prove intent to kill. This failure has long been held to constitute fundamental error. Therefore, Woodcox's conviction on attempted murder must be reversed and remanded for a new trial.

II. *Refusal to Give Defense Instructions 5 and 6*

■ Woodcox tendered instructions 5 and 6 regarding the credibility of witnesses. Instruction 5 would have instructed jurors, in part, that they

should specifically consider evidence of resentment or anger which some State's witnesses may have towards the defendant.

Evidence that a witness is biased, prejudiced or hostile toward the Defendant requires you to view that witness' testimony with caution, to weigh it with care, and subject it to close and searching scrutiny.

Instruction 6 would have informed the jury, in part, that

a witness' employment as a law enforcement official does not mean that such witness' testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

Additionally, this instruction provided that

it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his/her testimony may be colored by a personal or professional interest in the outcome of the case.

The trial court refused both instructions 5 and 6. Woodcox contends that this refusal is erroneous because the instructions were correct statements of law, supported by the facts adduced at trial and were not covered by other instructions. We disagree. The trial court gave a general instruction to the jury which informed them that in considering the testimony of any witness, a juror

may take into account any interest, bias, or prejudice the witness may have, as well as any relationship with other witnesses or interested parties. We have repeatedly held that it is not error for a trial court to refuse special instructions relating to police officers' testimony where a proper generalized credibility instruction has been given to the jury. *Banks v. State* (1991), Ind., 567 N.E.2d 1126, 1128. *Patrick v. State* (1987), Ind., 516 N.E.2d 63, 65. No error is presented by the trial court's refusal to give the defendant's tendered instructions 5 and 6.

### III. *Inadequate Pre–Sentence Investigation Report*

■ Woodcox contends that he was improperly sentenced because, at the time of his sentencing, the trial court had an inadequate pre-sentence report before it. The record reveals that the pre-sentence report was deficient and did not comply with *Ind. Code* § 35–38–1–9(B)(2) in that the report contained identifying information concerning Woodcox and a listing of juvenile and adult offenses, but failed to fully address the social history of the defendant, his employment history, his family situation, his economic status, and his personal habits. Woodcox argues that this deficiency, coupled with the *Ind. Code* § 35–38–1–8(a) requirement that a defendant convicted of a felony may not be sentenced before a written pre-sentence report is prepared by a probation officer, resulted in an erroneous sentence and violated his constitutional right to due process.

■ The State argues that Woodcox's failure to object to any inadequacies in the report, to present evidence, or to give a statement that presented matters that he deemed should have been a part of the report results in a failure on his part to show prejudice sufficient to require reversal. In response, Woodcox maintains that a pre-sentence report that fails to contain elements mandated by the legislature is *per se* defective and that a sentence based upon such a report is a violation of due process.

■ The right to have a pre-sentence report considered prior to sentencing is a privilege granted by the legislature; it is not a right. *Smith v. State* (1982), 432 N.E.2d 1363, 1373. Although we agree that the pre-sentence report was deficient, we must also note that the record reveals that Woodcox was given an opportunity to present any evidence or to make any statement that he desired prior to the judge's pronouncing sentence. It is incumbent upon the defendant to demonstrate how he was prejudiced by the omissions from the report. Woodcox did not attempt to make such a showing even in his petition to this Court. Consequently, we cannot grant reversal on the basis of an admittedly sparce report.

■ Finally, we note, *sua sponte*, that Woodcox's habitual offender sentence was improperly imposed. We have long held that the determination of habitual offender status constitutes an enhancement to an underlying sentence, and not a crime itself. *See Dotson v. State* (1984), Ind., 463 N.E.2d 266, 269; *Norris v. State* (1979), 271 Ind. 568, 394 N.E.2d 144, 147. Woodcox must be resentenced by the trial court with the habitual offender sentence imposed as an enhancement to one of the underlying felony convictions.

### IV. *Imposition of Maximum Consecutive Sentences*

■ Woodcox claims that the trial court erred by failing to articulate appropriate factors for imposing an aggravated sentence and by failing to perform the appropriate weighing of factors attendant to the character of the defendant and the nature of the offense. In particular, Woodcox claims that the trial court's imposition of maximum, consecutive sentences on each of the three counts resulting in a total sentence of 150 years is manifestly unreasonable. Primarily, he points to *Fointno v. State* (1986), Ind., 487 N.E.2d 140, and *Kubiak v. State* (1987), Ind.App., 508 N.E.2d 559, to buttress his argument. In *Fointno*, the trial court's imposition of sentences totaling 104 years for one count of class A rape, three counts of class A crimi-

nal deviate conduct, two counts of class B confinement, one count of class B robbery, and one count of class D intimidation were held to be manifestly unreasonable and a sentence of 80 years was ordered. Likewise, in *Kubiak*, sentences totaling 100 years, imposed for convictions of class A kidnapping, class A criminal deviate conduct, class A rape, and class B robbery, were held to be manifestly unreasonable and the Court of Appeals ordered that such sentences be reduced to 90 years.

■ In sharp contrast to the extreme physical injury brutally inflicted upon the victim by Woodcox in this case, neither *Fointno* nor *Kubiak* involved physical injury aside from that experienced during the rapes themselves. Additionally, neither *Fointno* nor *Kubiak* involved the imposition of an enhanced sentence because of the jury's finding that the defendant was an habitual offender. Against the backdrop of the facts in this case, we must apply our rule to determine whether the sentences imposed by the trial court are manifestly unreasonable. A sentence is *not* manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed. App.Rule 17(B)(2). In view of the raw physical violence inflicted upon the victim by Woodcox, coupled with Woodcox's extensive criminal record, we hold that the imposition of sentences in this case is not manifestly unreasonable.

### V. Enhancement of the Rape and Confinement Charges

■ Woodcox argues that the trial court erred in sentencing Woodcox for rape as a class A felony and confinement as a class B felony because these two felonies were aggravated based upon the same allegation of serious bodily injury contained in the attempted murder charge. He maintains that aggravating the two offenses based upon the same bodily injury violates his protections against double jeopardy as contained in both the national and state constitutions. We agree that a review of the record reveals that each of the three counts

contained in the charging information alleges that Woodcox threatened to kill the victim and choked, struck and beat the victim. We do not agree, however, that the identical threatening, choking, striking and beating is alleged in each count.

The evidence in this case clearly reveals that Woodcox threatened to kill the victim and choked and struck the victim while confining her in the car on the way to the scene of the rape. After arriving at the scene of the rape, the evidence reveals that Woodcox again threatened to kill the victim and choked, struck and beat the victim in order to compel her to submit to sexual intercourse. Additionally, the evidence reveals that after the commission of the rape, Woodcox violently beat the victim while continuing to confine her to the automobile. Based upon this evidence, it was entirely proper for the prosecutor to charge the jury to convict, and the trial court to sentence, Woodcox for the enhanced crimes of class A rape and class B confinement.

■ Additionally, Woodcox argues that his conviction for confinement cannot stand because the State charged him with the wrong section of the confinement statute. He argues that he was charged with a violation of *Ind.Code* § 35–42–3–3(B), whereas the language intended a charge under *Ind.Code* § 35–42–3–3(2); thus, he was improperly charged. It has long been held that it is the allegation in the body of the information that defines the crime and not the cited statute. *Hestand v. State* (1986), Ind., 491 N.E.2d 976, 980. Woodcox was convicted of the crime charged in the body of the information. His convictions for class A rape and class B confinement are affirmed.

### VI. Evidence and Testimony Regarding DNA

■ Woodcox maintains that the trial court erred in admitting evidence and testimony from an FBI agent concerning the results of DNA testing of blood found on Woodcox's boots at the time of his arrest and semen recovered from the automobile in which the rape occurred. At the time of trial, the State presented testimony from

FBI agent Presley, a DNA expert. Woodcox objected to this testimony on two grounds.

First, he objected because the court had ordered discovery completed by June 16th, but it was not until June 29th that Woodcox was first informed of agent Presley, and it was not until the trial started, on July 17th, that Woodcox received copies of agent Presley's reports regarding what tests were performed and the results of those tests. The court determined that Woodcox's counsel had known about Presley and the subject matter of his testimony since June 29th, but had made no attempt to interview or to depose him. Also, Woodcox did not request a continuance in order to talk to or depose Presley either after learning of his identity or the nature and results of the tests. Additionally, the record reveals that the State itself had not received the laboratory report until July 17th, the same day that Presley appeared to testify. Woodcox maintains that permitting Presley to testify despite the fact that his name was not provided until one month before trial and that his report was unavailable until the first day of trial constitutes a violation of due process of law and the right to confront witnesses.

■ Woodcox recognizes that a continuance is usually an appropriate remedy when discovery has not been complied with, but urges that, in this case, such evidence should have been excluded. He cites the five-part test articulated by this Court for determining whether to exclude the testimony of a witness. *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985. In that case we held that the trial court should consider (1) when the parties first knew of the witness, (2) the importance of the witness's testimony, (3) the prejudice resulting to the opposing party, (4) the appropriateness of lesser remedies such as continuances, and (5) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony. We continue to recognize these factors and hold that in this case the trial court properly weighed these factors in deciding to admit Presley's testimony. Woodcox first knew of Presley approximately three weeks before trial, but did not attempt to interview or depose him or request a continuance of the trial for such purpose.

Additionally, we note that Presley's testimony was not crucial because Woodcox admitted having sexual intercourse with the victim and maintained that the victim's blood was on his boot because of the automobile accident. Thus, the DNA testing results which confirmed that Woodcox had been in the victim's car and had had sexual intercourse with the victim was of relatively little importance.

Finally, we believe that had Woodcox truly contested the DNA testing results, he should have asked for a continuance in order to depose Presley and take additional measures to prepare to meet the DNA evidence presented by the State. We hold that the trial court was well within its discretion in overruling Woodcox's objection to the testimony of agent Presley.

■ Secondly, Woodcox challenges the admissibility of DNA testing results because DNA "fingerprinting" is a novel scientific concept without sufficient reliability to be placed before the jury and that the DNA results in this case did not meet minimum standards necessary to support a valid conclusion. Recently, this Court was faced with the question of whether DNA evidence was admissible in Indiana. *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297. In *Hopkins*, Justice Given analyzed the various state and federal cases pertaining to the admissibility of DNA evidence. After performing this analysis of case law, this Court agreed with his opinion that

once the trial court has ruled the witness qualified as a matter of law to give expert testimony regarding DNA analysis, subsequent evaluation of that evidence goes only to its weight as a matter of fact. Any battle of qualified experts, as in the instant case, or other conflict as to the reliability of evidence is to be resolved by the trier of fact ... whose finding in this regard will be upheld on review as long as the favorable evidence adequately supports it, as with any sufficiency question.

579 N.E.2d at 1303–04. In the instant case, Presley was shown to be qualified as an expert witness in that he had degrees in biology, chemistry, and criminal justice, with specialized training concerning DNA analysis and the operation of the FBI laboratory. Having determined that he was qualified to give expert testimony regarding DNA, we hereby hold that the evaluation of his testimony concerning the tests performed and the results of those tests were matters for the jury. The trial court did not err in allowing Presley to testify concerning the DNA analysis of semen and blood.

## CONCLUSION

For all of the reasons stated above, we hereby reverse Woodcox's conviction for attempted murder and remand this case to the trial court for a new trial on that count, as well as for assigning the habitual offender enhancement of sentence to one of the felony convictions.

SHEPARD, C.J., DeBRULER, and DICKSON, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Judge, dissenting.

I respectfully dissent from the majority opinion in the reversal of appellant's conviction of Attempted Murder. Without any question, attempted murder, like all crimes, must be proven including the intent to commit the crime.

The majority opinion correctly sets forth the instruction given by the trial judge on this subject. I cannot agree with the majority's conclusion that this instruction does not tell the jury they must find that appellant intended to kill the victim. The trial court's instruction stated that in order to convict the defendant of attempted murder, the jury must find that the defendant knowingly threatened to kill the victim, beat her about the face, head and torso with his fists and a certain blunt object, and that this conduct was a substantial step toward the commission of the crime of murder.

To say that this language does not convey to the jury that they must find that appellant intended to kill the victim is unrealistic to the extreme. It defies logic to believe that any person could listen to this instruction and then state that there was no need to find that appellant intended to kill the victim.

I would remand this cause to the trial court for resentencing on the habitual offender finding and would affirm the trial court in all other respects.