**James GRIFFIN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 878S160.**

Supreme Court of Indiana.

April 16, 1980.

Dwight F. Ritter, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant James Griffin was convicted by a jury in Marion County Criminal Court of armed robbery, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was sentenced to a determinate term of twenty years. Appellant lists three issues for our consideration on this appeal, concerning: (1) whether the trial court committed error in arriving at the sentence which it imposed; (2) whether certain questions by the prosecutor were unduly prejudicial so as to require an admonition of the jury or a mistrial; and (3) the sufficiency of the evidence.

On November 5, 1977, James Stewart was on duty as the manager of the Hooks Drugstore located at 38th Street and Mitthoefer Road in Indianapolis. Lenora Petry and Donna McCord were working as cashiers that night. At about 9:00 p. m., Stewart and Petry were both in the prescription area, where Stewart was filling a prescription. The prescription area is located at the back of the store, and is several steps above the sales floor. The sunglasses rack was located directly in front of the prescription area, and, because sunglasses had been stolen from the store previously, the store personnel were watching everyone in that area. They observed a man, whom they later identified as appellant Griffin, standing by the sunglasses rack for about ten minutes. When another customer came to the prescription area, appellant left the sunglasses rack and went down an aisle. He then returned to the prescription area holding a gun, and ordered Stewart and Petry

to place the cash drawer into a pillowcase. He forced Stewart, at gun point, to go the front of the store. Meanwhile, Miss Petry remained at the rear of the store and called the police. Appellant approached Donna McCord at the front cash register and demanded that she put the money drawer and money changer into the pillowcase. He then left the store.

At trial, all three store employees identified appellant as the man who robbed them. Appellant presented an alibi defense, claiming he was at his girlfriend's house in Indianapolis at the time of the robbery, watching the Muhammed Ali-Ernie Shavers boxing match on television.

## I.

■ Concerning the sentence imposed, appellant argues the trial court improperly heard evidence of another robbery which the defendant allegedly committed but of which he was not convicted. The trial court sentenced appellant to twenty years imprisonment under Ind.Code § 35–50–2–5 (Burns 1979 Repl.). This section provides for a ten-year term for a felony of this class, "with not more than ten [10] years added for aggravating circumstances." In the sentencing hearing, the State presented evidence that the defendant had committed a robbery similar to the one for which he was tried and convicted. The robbery occurred in another Hooks Drugstore in the Indianapolis area two days before this crime. Appellant was never tried for the later robbery. He now claims, therefore, that the court improperly considered this crime in sentencing him to an additional ten years for aggravating circumstances.

This Court settled this issue in *McNew v. State*, (1979) Ind., 391 N.E.2d 607, and *Gardner v. State*, (1979) Ind., 388 N.E.2d 513. We held in those cases that the presumption of innocence does not extend to sentencing proceedings, and that a sentencing judge does not err in considering a prior arrest or prior criminal activity which has not been reduced to a conviction. West's Ann.Ind.Code § 35–4.1–4–7 (1978) provides in part:

"(a) In determining what sentence to impose for a crime the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record. character and condition of the person.

. . . . .

(c) The court may consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

(1) The person has recently violated the conditions of any probation, parole, or pardon granted him,

(2) *The person has a history of criminal activity,*

(3) The person is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility,

(4) Imposition of a reduced sentence or suspension of the sentence, and imposition of probation would depreciate the seriousness of the crime,

(5) The victim of the crime was sixty-five (65) years of age or older, and

(6) The victim of the crime was mentally or physically infirm."

(emphasis added.) *See McNew v. State, supra.* Further, subsection (d) specifically provides that the sentencing judge is not limited to the criteria listed under (b) and (c) in determining the sentence to be imposed.

Appellant was identified in the sentencing hearing as the person who had committed the robbery which had not been reduced to a conviction. In imposing the sentence, the trial judge indicated his consideration of appellant's pattern of criminal behavior and prior criminal activity. In addition to the Hooks robbery for which appellant was not convicted, the trial court considered the presentence investigation report. This report reveals that appellant has been convicted several times for, among other things, robbery, shoplifting and uttering a forged instrument, dating back to 1971. The court stated during the sentencing hearing:

984

"But we can consider, I think, the prior criminal record, and I do note that he does have an extensive record. There is one other robbery at least as far as the one part [of the report] goes. And the court has also heard testimony now that there has been a pattern of criminal endeavor and now finds that there are aggravating circumstances in that: (1) the prior criminal activity of the defendant; and (2) the pattern of repeated criminal activity with a weapon involved which endangers the safety of the citizenry. . . ."

Record at 107. Thus, the trial judge properly considered all of appellant's criminal activity, including the evidence of the robbery which had not been reduced to a conviction. Moreover, we cannot say under all of the circumstances and matters in the record before us that the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Therefore, we will not revise the sentence in this case. *McNew v. State, supra; Gardner v. State, supra; Misenheimer v. State*, (1978) Ind., 374 N.E.2d 523.

We are mindful of our recent pronouncement in *State v. McCormick*, (1979) Ind., 397 N.E.2d 276, striking down a portion of the Indiana death penalty statute. That decision does not require a different result in this case. First, as we explained in *McCormick*, more stringent procedural standards are required in a capital sentencing hearing than are required in a non-capital sentencing situation. *See Gardner v. Florida*, (1977) 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393. Second, in the case before us, the legislature has provided a sentencing *range*, within which the trial court has a great deal of flexibility regarding the sentence he imposes, depending on the existence of aggravating and mitigating circumstances. The statute in question in this case also allows for greater discretion in the trial court in determining what constitutes an aggravating circumstance. *Compare* Ind.Code § 35–50–2–9, *supra, with* West's Ann.Ind.Code § 35–4.1–4–7, *supra.* We find no error in this issue.

II.

Appellant presented six alibi witnesses who testified that appellant was with them at his girlfriend's house watching a boxing match at the time of this incident, and therefore could not have been involved in it. A separation of witnesses order was in effect, and all six witnesses were in the hall outside the courtroom waiting to be called to testify. One of the witnesses, Donald Fuqua, testified that appellant was present all of the time during the fight, and had he left, would have had to go "through a window or something like that." After Fuqua left the courtroom, he was heard loudly telling all of the other alibi witnesses of his testimony in regard to the window, and they were all laughing rather loudly about it.

The prosecutor later attempted to raise this fact during the recross-examination of another alibi witness. The witness was asked if she had heard Ray Evans, another alibi witness who had already testified, talking in the hallway about appellant going out through a window. After the trial court excused the jury, defense counsel moved for a mistrial. Counsel argued that the prosecutor was trying, improperly, to "inflame" the jury by the reference to the defendant "going out the window." He asserted that the prosecutor was attempting to convince the jury that the defendant did leave by means of the window, when there was no evidence that this actually happened. The prosecutor contended that he had evidence these witnesses had discussed matters in the hall and compared their testimony in violation of the separation of witnesses order, and that he had a right to bring this out to the jury to affect the credibility of these witnesses and their story. The court advised the prosecutor that if these allegations were true, the issue would properly be raised by objecting to the witness' testimony, but that the prosecutor did have a right to question the witness concerning alleged collaboration with other witnesses. The court then overruled the motion for a mistrial. The witness was not questioned further on this issue. Appellant

now argues that the jury was prejudiced by the prosecutor's question and, therefore, that the court improperly overruled the motion for a mistrial.

It is within the discretion of the trial judge to admonish the jury or grant a motion for mistrial, and we will not reverse his decision unless an abuse of that discretion is shown. *Springer v. State*, (1979) Ind., 393 N.E.2d 131, 134; *Teague v. State*, (1978) Ind., 379 N.E.2d 418, 426; *Downs v. State*, (1977) 267 Ind. 342, 345, 369 N.E.2d 1079, 1080. There is no showing here that such prejudice attached to the prosecutor's question that it was necessary for the court to order a mistrial or even admonish the jury. In fact, as the trial court pointed out, the prosecutor was pursuing a legitimate line of questioning in trying to establish collaboration among the witnesses. A previous witness had made a reference to the defendant's leaving through a window, and the prosecutor only asked the later witness if she had heard other witnesses mention something about that while they were outside in the hall. Before the witness could answer the question, the court removed the jury and resolved the question. The prosecutor did not pursue the matter further. Therefore, there were no grounds for mistrial and the court properly denied the motion.

### III.

Finally, appellant claims there was insufficient evidence to sustain the jury's verdict. When the sufficiency of the evidence is challenged, we will consider only the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. The conviction will not be set aside if there is substantial evidence of probative value from which the jury could have found the defendant guilty beyond a reasonable doubt. *Ruetz v. State*, (1978) 268 Ind. 42, 373 N.E.2d 152. In this case, three witnesses identified the defendant as the person who robbed them. Their testimony made it clear that they had observed him for some time in the store, because his conduct was somewhat suspicious prior to the time he committed the robbery.

Mr. Stewart and Miss Petry testified that the gunman had pockmarks on his face. In each case, while the witness was on the witness stand, defense counsel asked if he or she could see pockmarks on the defendant's face as he sat in court. They stated that they could not at that moment. On redirect examination, the prosecutor asked each of the witnesses to step down from the witness stand and walk up to the table where appellant was sitting and look at him at closer range. Both Stewart and Petry testified that, at that distance, they could see the pockmarks that they observed at the time of the robbery. They had seen him at close range in the store, and their description of his complexion thus remained the same. Other witnesses, testifying on appellant's behalf, stated they did not think his face was pockmarked. However, this was merely a conflict in the evidence to be weighed and resolved by the jury, and does not lead us to conclude the evidence was insufficient.

Six acquaintances of appellant testified that he was at the Williams home during the time of the robbery, attending a small party and watching the Ali-Shavers fight. A representative of the television media, Barbara Gurwitz, testified that the Ali-Shavers fight was not televised that night. Boxing matches were televised, but the Ali-Shavers fight was not shown until several weeks later. Again, this presented a conflict for the trier of fact to resolve, and it is not appropriate for review by this Court on appeal. There were ample facts from which the jury could have found beyond a reasonable doubt that appellant did, in fact, commit this robbery. Therefore, we have no grounds to disturb this jury's verdict.

Finding no reversible error, we affirm the judgment of the trial court.

All Justices concur.