**Timothy Earl KING, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 71S00–8705–CR–484.**

Supreme Court of Indiana.

Dec. 20, 1988.

---

Anthony V. Luber, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

On the evening of April 20, 1986, Betty Rink was found critically injured on the floor of her South Bend apartment. She

died later in the hospital of numerous wounds to her head and upper body, caused by a hammer found at the scene. Appellant was seen leaving Rink's home on a bicycle with the left pedal missing shortly before Rink was discovered.

A tinted eyeglass lens, blood splattered on one side, was found in the room where Rink was attacked and the tint and prescription of the lens matched that of glasses made recently for appellant. A bicycle with a pedal missing was identified as one having been loaned to appellant and a gray hair from a caucasian was found on the handle grip of that bicycle.

Appellant was convicted of the murder of Rink and sentenced to fifty years. That sentence was additionally enhanced by thirty years due to a finding appellant was an habitual offender. There are twenty-two issues raised for review.

## I.

■ Betty Rink was murdered on April 20, 1986. The State filed an information charging appellant with that murder on April 24, 1986. Trial was scheduled for July 22, 1986. On July 9, 1986 the State filed a motion for continuance, alleging it did not yet have test results back from the F.B.I. and had been informed that the results would not be available in time for the July 22, 1986 trial date. The court granted the continuance and rescheduled the trial for September 16, 1986.

■ The granting of a non-statutory continuance lies within the discretion of the trial judge and his ruling is reversible only upon an abuse of that discretion. *Glenn v. State* (1986), Ind., 493 N.E.2d 463. *Hoy v. State* (1983), Ind., 448 N.E.2d 31. Appellant points to a black eye and psychological stress he suffered as a result of the delayed trial. The potential of a delay to cause such stress was not presented to the trial judge at the time he made his decision and therefore these items are not relevant to whether or not he erred in granting the continuance. Appellant also states that the court did not fairly and impartially consider the request for continuance. In support he alleges that the State offered to submit its

April 24, 1986 letter to the F.B.I. on the items submitted for testing, but the judge said it was unnecessary, and the fact the judge refused to condition the granting of the continuance upon the State's disclosing the ultimate test results. Neither of these allegations are of such magnitude as to demonstrate either error or abuse of discretion on the part of the trial judge.

## II.

■ State's witness Joseph Herrera, an F.B.I. forensic serologist, was permitted to identify blood splatters depicted in photographs of the crime scene over appellant's objection that such identification was beyond the scope of Herrera's expertise. He asserts that the jury was as qualified as Herrara to make that determination and that it was error to permit Herrera's "lay" opinion. In qualifying Herrera as an expert, the State elicited that he examined 3000–4000 items of physical evidence a year and had expertise in differentiating between blood contacting surfaces by drops, splatters or smears. He testified the blood on an eyeglass lens found at the crime scene was smeared onto the glass. He described the differences between smears, droplets and splatters. The witness had extensive experience working with blood and was extremely knowledgeable concerning blood patterns and differentiating between them. It can be assumed that the average juror does not come into contact with 3000–4000 bloodied items a year and would not have the same experience as Herrera in distinguishing the method by which the item became bloodied. Herrera's expert qualifications extended to include his vast experience with blood covered objects and it was not error to permit his opinion that the photographs depicted blood in a splatter pattern on the walls.

## III.

■ State's exhibits 7, 8, 15 and 16 were photographs of the body of the victim and the bloody walls of the apartment. Appellant urges it was error to admit these photographs because their relevance was mini-

mal and their inflammatory nature extreme.

"To be admitted, it must first be established that the photographs are a true and accurate representation of the things they are intended to portray. *Johnson v. State* (1972), 258 Ind. 648, 283 N.E.2d 532. Their relevancy is determined by whether a witness would be permitted to describe verbally that which the photograph depicts. *Murphy v. State* (1977), [267] Ind. [184], 369 N.E.2d 411. Although the photographs may depict gory, revolting or inflammatory details of the crime when presented to the jury, this is not a sufficient basis for excluding such evidence *Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844; *Meredith v. State* (1966), 247 Ind. 233, 214 N.E.2d 385." *Wilson v. State* (1978), 268 Ind. 112, 374 N.E.2d 45.

The photographs of the body and the walls were relevant to depict what occurred during the crime. The position of the body and the splattering of the walls were used to support the State's theory that a struggle occurred prior to death. Further, the son who discovered the body and the investigating personnel arriving at the scene testified and described both the appearance of the body and the walls. The pictures were clearly relevant and admissible despite the shocking nature of their contents.

### IV.

■ State's exhibits 34, 35, 36, 37 and 38 were photographs of the wounds on Betty Rink. Dr. Kristen Jacobs was a pathologist who performed an autopsy on Betty Rink. Dr. Jacobs referred to the photographs when testifying as to the cause of death, which wounds she believed to have resulted from defensive actions, and the cause of the injuries. The autopsy photographs focused on close ups of the wounds and were beneficial to the jury in understanding the testimony of the pathologist. Their admission was not error.

### V.

■ On the handlebars of the bicycle appellant had been riding, a hair was dis-covered. State's witness Podolak was qualified as a hair and fiber expert. He testified that the hair was a gray head hair from a caucasion human being, that "could have" come from the victim, who was caucasion and had gray and brown head hair. He also testified that because the hair was gray it lacked characteristics from which comparisons can be made to determine its source.

Appellant objected to the admission of Podolak's testimony asserting it was nothing more than a "pseudo-scientific red flag being waved in front of the jury" and that the effect was to allow speculation to be introduced to the jury under the guise of expert testimony. It was clearly brought out to the jury that Podolak could do no more than observe the hair was caucasion, gray, not dissimilar to the victim's, and "could have" come from her. He did not rule out the possibility it could have come from any other caucasion person who had some gray hair. Apparently, the fact the hair was gray precluded a more definitive analysis. The hair was merely circumstantial evidence linking appellant to the crime. Podolak did no more than identify the type of hair. The inability to positively tie the hair to the victim goes to the weight of the evidence and not its admissibility. *Bivins v. State* (1982), Ind., 433 N.E.2d 387.

### VI.

■ Jacobs was permitted to testify concerning her opinion as to the cause of bruising on the victim. She testified that some of the bruises were consistent with ones inflicted by squeezing from fingertips, and that others were shapeless, less clearly defined, and that she was uncertain as to the cause but they could have come from a fist or blunt instrument. Appellant objected to this testimony based upon Jacobs' uncertainty as to the cause of the bruises and urges it was error to permit her to speculate.

Jacobs demonstrated familiarity with bruising patterns and causation and her expertise in this area was not challenged. Once again, the lack of specificity goes to the weight and not the admissibility. Her

testimony reflected her opinion of the causation and the jury could give it whatever weight it chose. It was not error to permit her testimony.

## VII.

■ Appellant filed a motion in limine asking that the State only be allowed to establish that he had been convicted of one of the infamous crimes as referred to in *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. In doing so he was attempting to prevent the jury from learning that he had a prior rape conviction. He contends the testimony of three State's witnesses who used the word "rape" in reference to this case was extremely prejudicial when coupled with his prior rape conviction. He offers no convincing rationale why we should alter the present rule and this court will continue to permit revelation of the specific impeaching offense.

## VIII.

■ State's exhibits 49, 50 and 51 were court documents admitted during the habitual offender phase of the trial. Appellant asserts that these documents were facially defective since the judge's certification read "I, William C. Whitman, sole and presiding Judge of the County of St. Joseph ..." and there is in fact more than one superior court judge in St. Joseph County. The certificate was a pre-printed form with the judge's name and the court typed in. The fact there is more than one superior court judge has no relevance to the authenticity of the records and appellant's argument that the records should not have been admitted is not persuasive.

## IX.

■ Appellant tendered his preliminary Instruction # 1 which reads as follows:

"Under the law, you must presume that the defendant is innocent, and must continue to do so throughout the trial, unless the State proves every essential element of the crime with which the defendant is charged beyond a reasonable doubt. The State must prove every essential element from the evidence and reasonable inferences drawn from the evidence and may not rely on imagination or speculation.

Because he is presumed to be innocent, the defendant is not required to present any evidence to prove his innocence or to provide any explanation. If, at the end of the trial, you have a reasonable doubt concerning the defendant's guilt, you must find him not guilty."

The trial court gave an identical instruction with the exception that the court's instruction omitted the underlined passage above.

The entire substance of the argument is that the instruction requested was accurate and proper and where, as here, the State relies on circumstantial evidence, such an instruction should be required. There is no authority in support of this argument and no demonstration that the court's instruction was deficient without this sentence. The claim is not sustained.

## X.

Appellant asserts that the trial court erred in refusing his tendered preliminary Instruction # 2. He simply expresses the belief that his instruction was a better, more complete instruction than the one given by the court. The instruction here conveyed to the jury that they were the judges of the law and the facts. Appellant's was more detailed than the actual instruction given, but was in no way more correct or worthy of mention. The trial judge's decision to give his own instruction in place of appellant's was not error.

## XI.

■ jury was instructed as follows: "The flight of a person immediately after the commission of the crime with which he is charged, if there was such a flight, is a circumstance which may be considered by you in connection with all the other evidence to aid you in determining his guilt or innocence."

Appellant urges that this instruction placed undue emphasis on one aspect of the evidence and that it was therefore error to instruct the jury in this manner. This

court has previously held that the instruction on flight, when supported by the evidence, is proper and does not invade the province of the jury by emphasizing one piece of evidence. The instruction was properly given. *Taylor v. State* (1984), Ind., 469 N.E.2d 735.

## XII.

Objection by the defense was made to State's Instruction #4, which discussed presumption of innocence. An instruction of this nature has been upheld numerous times on appeal, but appellant urges that the decisions so upholding the giving of such an instruction should be overruled. He urges the instruction grudgingly extends to an accused the rights and protections that have been established to restrain the government. Appellant's interpretation of the instruction does not produce a conviction that the prior decisions are in error. *Opfer v. State* (1985), Ind., 482 N.E.2d 706; *Cheney v. State* (1985), Ind., 486 N.E.2d 508; *Green v. State* (1984), Ind., 461 N.E.2d 108.

## XIII.

█ The following instruction was tendered by appellant and its refusal by the trial court is asserted as error.

"Subsidiary facts need not be proved beyond a reasonable doubt to justify a conviction; it is the facts essentially necessary to constitute a crime which must be so proven: but a reasonable doubt as to such essential facts may arise from a consideration of evidence adduced in support of subsidiary facts."

The instruction is a rather confusing way to inform the jury that the State need only prove the *elements* of the crime beyond a reasonable doubt but that the jury should consider all of the evidence in making its determination. This information was adequately conveyed by other instructions and its refusal in this form did not prejudice appellant.

## XIV. & XV.

Appellant raised the same issues as those discussed in Issues IX and X, reasserting them in relation to the final instructions rather than the preliminary instructions. The results are the same.

## XVI.

█ During the habitual offender proceeding, the jury received the following instruction:

"The Statute defining the offense of Count II: Habitual Offender reads in pertinent part as follows:

After he has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony, a person has accumulated two (2) prior unrelated felony convictions.

A person is an habitual offender if the jury finds that the State has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions."

Appellant urges that the trial court erred by presenting the jury with an incomplete statement of the law. He requested that the entire statute be given to the jury. The omitted portion of the statute reads as follows:

"However, a conviction does not count, for purposes of this subsection, if:

(1) It has been set aside; or

(2) It is one for which the person has been pardoned."

Appellant urges that the question of whether or not he had been pardoned for one of his prior felony convictions or it had been set aside was a question for the jury since the State did not present evidence that these events did not occur.

█ The burden of proof on presenting evidence that a conviction has been pardoned or set aside rests with the defendant. *Harper v. State* (1985), Ind., 474 N.E.2d 508. *Choate v. State* (1984), Ind., 462 N.E.2d 1037. Appellant presented no evidence that the prior felony convictions relied upon by the State were invalid and consequently omission of this language from the instructions was not error.

## XVII.

█ Trial began in this matter on September 16, 1986, continued through the

17th, 18th and 19th, resumed on Monday the 22nd and was submitted to the jury on the 23rd. Upon return of a guilty verdict by the jury on that date, the judge advised them of the habitual offender issue and then sent them to dinner, calling a recess until 8:30 p.m. At 9:10 p.m. the court resumed with an interrogation of a juror who was feeling ill. The jury was then brought in, preliminary instructions read and evidence presented. The State rested, appellant moved for judgment on the evidence and the State asked to be permitted to reopen its case. Appellant had further requested at 10:40 p.m. to be absent from the remainder of the trial so that he could go to bed as he was not feeling well. Without ruling on any of the motions, the trial court, at 11:10 p.m., recessed the case until the next morning. At that time the State was permitted to reopen its case and the jury proceeded to determine that appellant was in fact an habitual offender pursuant to I.C. § 35–50–2–8.

Appellant objected repeatedly to proceeding with the habitual offender portion of the trial at such a late hour. He cited his personal illness and exhaustion, counsel's fatigue and the strain on the jury. He argues that he was prejudiced by proceeding at such a late hour and that in effect it made the habitual offender determination a mere rubber stamp for the prosecutor.

The trial judge was also a participant in the trial and was in a better situation to assess fatigue and state of mind that this court. The decision to continue into the night was one of those undoubtedly made after considering all of the negative aspects whether raised by appellant or not. The judge had the unique ability to weigh the pros and cons of an adjournment and his determination will not be disturbed. That is not to say that all decisions of this type will be met with approval. Rather, it means that a clear showing of abuse of discretion coupled with prejudice to the defendant must be shown.

## XVIII. & XIX.

The same issue is raised in both of these arguments, namely, the propriety of the trial court's decision to permit the State to reopen its case following appellant's motion for judgment. The State failed to present evidence of the date of commission on the second felony conviction alleged in support of its habitual offender charge. Appellant raised this evidentiary failure in a motion for judgment following the State's decision to rest its case. The trial court declared a recess for the night, based on this motion and appellant's request to be allowed to leave because of the late hour. The next morning the court allowed the State to re-open its case, specifically noting that he was doing so prior to ruling on appellant's motion. The State then remedied the evidentiary deficit and the jury determined that appellant was indeed an habitual offender. As this Court held in *Maxey v. State* (1969), 251 Ind. 645, 244 N.E.2d 650:

> "In appellant's third objection, he contends that the trial court committed reversible error in permitting the state to present additional evidence in order to prove venue after it had rested its case and after the appellant had moved the trial court for a directed verdict. The record indicates that the judge had not yet ruled upon appellant's motion for a directed verdict at the time the state was allowed to introduce this additional evidence. It has long been held that the action of a trial court in allowing a party to reopen its case after it has rested is a matter of discretion for the court, and, unless clear abuse is shown, this court will not interfere with such a decision by the trial court. *Roush v. Roush* (1900), 154 Ind. 562, 55 N.E. 1017."

The decision by the trial court permitting the State to reopen its case to present evidence of the date of commission of the second felony was within the scope of its authority and not an abuse of discretion. Appellant was not misled by the failure. He was aware of the dates of commission, conviction and sentencing on the two felonies relied upon by the State. As has often been stated, a trial is not a game of technicalities but one in which the facts and truth are sought. *Eskridge v. State* (1972), 258

Ind. 363, 281 N.E.2d 490. No error has been established.

## XX.

■ On the day appellant was to be sentenced, his counsel made an oral request for a continuance and asked that the court order a physical and mental examination of appellant. The trial court's denial of these requests is asserted as error. I.C. § 35–38–1–10 provides:

> "Sec. 10. The court may order that the convicted person:
>
> (1) undergo a thorough physical or mental examination in a designated facility as part of the presentence investigation...."

The trial court had the authority to order the examinations but no duty to do so. *Alleyn v. State* (1981), Ind., 427 N.E.2d 1095. Denial of appellant's last minute motion for examination was not error.

## XXI.

■ Appellant urges that the evidence was insufficient to support the verdict, essentially urging there was insufficient evidence of identity. In support he points out conflicts in the evidence and that the case is based mainly on circumstantial evidence. These considerations go to the weight to be given the evidence, not its credibility and we will not engage in reweighing that evidence. Looking at the facts most favorable to the verdict, the evidence was sufficient to support the verdict.

## XXII.

Appellant urges the cumulative effect of all the errors alleged leads unalterably to the conclusion that appellant was prejudiced. However, he has not convinced us that these errors occurred and his conviction must therefore stand.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.