Charles EVANS, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8704–CR–453.

Supreme Court of Indiana.

Dec. 7, 1990.

Theodore M. Sosin, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Confinement, a Class B felony, two counts of Rape, Class A felonies, Murder, and Felony Murder. At the penalty phase of the trial, the jury recommended that appellant receive the death penalty. The trial judge so ordered.

The facts are: On the evening of October 3, 1985, appellant met Darlene Hendrick, the victim, and they engaged in a conversation. They decided to purchase some whiskey and then proceeded to an abandoned building. While in the building, Hendrick excused herself to go to the bathroom. On another occasion, appellant followed her and put his knife close to her neck instructing her that he would not hurt her as long as she cooperated with his request. He then proceeded to rape her.

Following this incident, they went to the Clique Lounge for a drink. After leaving the lounge, they returned to the abandoned building and consumed more alcohol. During this period, appellant forced the victim to perform oral sex and again raped her. However, during this encounter, he stabbed the victim 45 times, cut her hair, and then proceeded to pull her body outside of the building. He then called the police.

Appellant contends that the findings of the jury and the court were contrary to the evidence. He claims the mitigating circumstances clearly outweighed the aggravating circumstances and that the court further erred in its failure to articulate in the sentencing hearing or in its formal findings the mitigating circumstances and the balancing process used in reaching its decision.

It is the responsibility of the trial court to indicate its reasons for imposing a sentence in order for this Court to carry out its function of reviewing the trial court's sentence. See *Abercrombie v. State* (1981), 275 Ind. 407, 417 N.E.2d 316. The statement of reasons must contain the following three elements: 1) it must identify all significant mitigating circumstances and aggravating circumstances; 2) it must include the specific reason why each circumstance is mitigating or aggravating; and 3) the mitigating circumstances must be weighed against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances. *Robinson v. State* (1985), Ind., 477 N.E.2d 883, 886. This Court has held that more stringent procedural standards are required in a capital sentencing hearing than are required in a non-capital sentencing situation. *Griffin v. State* (1980), 273 Ind. 184, 402 N.E.2d 981. Under the death penalty statute, Ind.Code § 35–50–2–9(c)(8), a trial judge in consider-

ing mitigating circumstances may consider: "Any other circumstances appropriate for consideration."

To support his position, appellant cites *Eddings v. Oklahoma* (1982), 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1. At the time of the offense, Eddings was 16 years old. An Oklahoma statute dealing with the death penalty provided for consideration of both mitigating and aggravating circumstances. The statute however did not define what was meant by "any mitigating circumstances." The trial judge in imposing the death sentence found aggravating circumstances but refused to consider as mitigating circumstances Eddings' unhappy upbringing and emotional problems. The trial judge's only mitigating circumstance was the petitioner's youth. The United States Supreme Court in vacating the decision held that the Eighth and Fourteenth Amendments require that the sentence not preclude the mitigating factors such as the defendant's character or record and any of the circumstances that are proffered as a basis for mitigation.

Appellant relies upon *Skipper v. South Carolina* (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1. There the State sought the death penalty. Appellant attempted to introduce testimony of two jailers and a regular visitor to the effect that he had "made a good adjustment" during the time he spent in jail between his arrest and trial. However, the trial judge refused this evidence concluding that it was irrelevant and inadmissible. In reversing the imposition of the death sentence, the United States Supreme Court held that the exclusion of the evidence denied the petitioner the right to place before the sentencer relevant evidence in mitigation of punishment.

Appellant also relies on *Fitchcock v. Dugger* (1987), 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347. There the petitioner received a death sentence. Defense counsel introduced evidence of several mitigating factors including the defendant's misconduct as a child, the fact that he had been one of seven children in a poor family, that his father had died when he was a child, and that he had been an affectionate uncle to the children of his brothers. Counsel also argued his age and lack of prior criminal activity and his voluntary surrender to authorities. The judge gave a limited instruction to the jury as to what mitigating factors they should consider. The United States Supreme Court reversed, finding that the advisory jury was instructed not to consider mitigating factors. They further found the sentencing judge refused to consider evidence of nonstatutory mitigating factors.

We note that appellant's reliance upon the foregoing cases is misplaced. In those cases, the United States Supreme Court reversed the death sentences because the sentencer was either precluded from considering or refused to consider mitigating factors unlike the instant case. Nowhere in the instant case is there any indication that the trial court refused to consider any of the evidence proffered in mitigation by appellant.

Appellant also relies on decisions from this Court to support his position. He primarily relies on *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied*, —— U.S. ——, 110 S.Ct. 205, 107 L.Ed.2d 158. There the death penalty was ordered. On appeal, Games argued the trial judge failed to find and properly weigh purported mitigating circumstances. This Court held that the failure to find mitigating circumstances, which are clearly supported by the record, may give rise to the belief that they were overlooked and hence not properly considered. However, we found that there was no reason to presume that any of the alleged mitigating circumstances had been overlooked, and we affirmed the trial court.

In the case at bar, appellant's childhood was filled with loneliness and rejection, his mother was an alcoholic, his father died when appellant was a teenager, he turned to male prostitution after high school to support himself, he had a criminal history with sex related crimes, and he had a history of psychiatric problems. He also reported the instant crime to the police and waited for their arrival. Appellant obtained his high school diploma while attending the Indiana Youth Center. The presentence

report evaluated his intelligence as slightly above average but rather unmotivated and stated he would put forth only the minimum effort needed to survive. We find no reason to suppose the trial court overlooked the evidence that was presented. The judge made the following findings:

"7. Evidence was presented at the trial and sentencing hearings, and considered by the Court, regarding the mental status of the defendant, Charles G. Evans, including the testimony of Mary Woolitz–Dooley, Dr. Gary Bartell, Dr. Dwight Schuster, and Dr. Ronald Hull. The Court now finds that defendant Charles G. Evans:

(a) did not suffer from a mental disease or defect, and was able to appreciate the wrongfulness of his conduct.

(b) did not have a psychiatric disorder which disturbed his thinking, feeling or behavior and impaired his ability to function.

(c) was not under the influence of extreme mental or emotional disturbance.

(d) had the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law.

(e) was not substantially impaired as a result of mental disease or defect or of intoxication."

The trial judge did in fact consider the evidence proffered in mitigation by appellant. We therefore find that none of the purported mitigating circumstances can be presumed to have been overlooked by the trial judge. We find no error.

■ Appellant contends the trial court erred in the de-emphasis to the jury of their role in the consideration of the death penalty. He contends the trial court erred in instructing the jury and permitting the prosecutor to mention that their sentencing decision was a recommendation to the trial judge who would make the final determination.

In support of his argument, appellant relies on *Caldwell v. Mississippi* (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231. In *Caldwell,* the prosecutor sought to minimize the jury's sense of responsibility by arguing that the final determination of the death sentence rests not with the jury but with the reviewing courts. The United States Supreme Court determined that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29, 105 S.Ct. at 2639, 86 L.Ed.2d at 239.

Appellant also relies on *Dugger v. Adams* (1989), 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435. In *Dugger,* Adams was charged with first-degree murder. During jury selection, the trial judge instructed prospective jurors on their "advisory" role under Florida law and indicated to them that the court was not bound by their recommendation but instead he would make the ultimate decision. Eventually Adams filed a second federal *habeas corpus* petition. The District Court held it was procedurally barred. The Eleventh Circuit reversed. On certiorari, the United States Supreme Court reversed holding that "the decision in *Caldwell* is relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." *Id.* 489 U.S. at 407, 109 S.Ct. at 1215, 103 L.Ed.2d at 443. The Court also said "to establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Id.* at 407, 109 S.Ct. at 1215, 103 L.Ed.2d at 443.

Appellant also relies on recent decisions from this Court regarding the death penalty. He cites *Huffman v. State* (1989), Ind., 543 N.E.2d 360 and *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731. Appellant's reliance on *Martinez Chavez* however is misplaced in that the central issue in *Martinez Chavez* was whether the trial court was justified in overriding the jury's recommendation against the death penalty unlike the instant case.

In *Huffman,* the defendant contended, as appellant contends in the instant case, that he was entitled to a new sentencing hearing because the trial court improperly emphasized the fact that the jury's role in sentencing was merely advisory, and the ultimate responsibility in determining the death penalty lies with the court. The record in *Huffman* revealed that all of the statements the defendant complained about occurred during *voir dire.*

In *Huffman,* as in the instant case, the defendant relies on *Caldwell* to support his position. However, we found *Caldwell* to be distinguishable from *Huffman* in that "the trial court and counsel were careful in stating that the jury's recommendation to the trial court was of extreme importance and would be seriously considered by the trial court." *Huffman, supra* at 372. We found that the comments to the jury were correct statements of the law.

In the instant case, we note that as in *Huffman* similar de-emphasizing remarks were made during *voir dire* and also were made by the prosecutor in his opening and closing statements. They also were made during instructions given to the jury at the close of the guilt phase as well as during preliminary and final instructions at the death phase. We note that appellant's reliance on *Caldwell* and *Dugger* is of no help to support his position. The record here reveals that the statements to the jury were correct statements of the law. We find no error.

■ Appellant contends the trial court erred in discharging venireman Allington for cause concluding that the trial court's decision violated *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

In *Witherspoon,* the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Id.* at 522, 88 S.Ct. at 1770, 20 L.Ed.2d at 784–85. Our Court has followed this deci-

sion in numerous opinions. *See Daniels v. State* (1983), Ind., 453 N.E.2d 160 and *Lamar v. State* (1977), 266 Ind. 689, 366 N.E.2d 652. We stated in *Daniels,* "the *Witherspoon* standard can present a dilemma to the trial court when some of a juror's answers about his belief in the death penalty are equivocal. It is then the duty of the trial court to pursue the matter further until it is established that the juror is 'irrevocably committed' to vote against the death penalty." *Daniels, supra* at 166.

Indiana Code § 35–37–1–5, provides:

"(a) The following are good causes for challenge to any person called as a juror in any criminal trial:

(3) If the state is seeking a death sentence, that the person entertains such conscientious opinions as would preclude the person from recommending that the death penalty be imposed."

On *voir dire,* Allington first stated that he was opposed to the death penalty. When counsel sought to explore that statement, Allington stated that he could think of no circumstance which would alter his opinion. On further examination, he stated that as an attorney (Allington is a professor of law at Indiana University, Indianapolis) he had learned to never say never. However, he was familiar with Indiana law and the requirements for the death penalty and that none of those requirements would cause him to invoke the death penalty. It is clear from the record that the trial court did not err in excusing Allington for cause. We find no violation of the rule under *Witherspoon.*

■ Appellant contends the trial court erred by reason of overbearing trial hours, thereby reducing appellant's right to be present and assist his counsel and preventing the jury from giving this matter the required attention.

This Court in *King v. State* (1988), Ind., 531 N.E.2d 1154 recently addressed a similar argument raised by appellant. The jury returned a guilty verdict. The judge then advised them of the habitual offender claim. Thereafter, the judge sent the jury to dinner, calling a recess until 8:30 p.m.,

and concluded the trial that evening at 11:10 p.m. Defense counsel objected to the habitual offender portion of the trial at such a late hour.

In *King* we stated:

"The trial judge was also a participant in the trial and was in a better situation to assess fatigue and state of mind that *[sic]* this court. The decision to continue into the night was one of those undoubtedly made after considering all of the negative aspects whether raised by appellant or not. The judge had the unique ability to weigh the pros and cons of an adjournment and his determination will not be disturbed. That is not to say that all decisions of this type will be met with approval. Rather, it means that a clear showing of abuse of discretion coupled with prejudice to the defendant must be shown." *Id.* at 1161.

In the instant case, appellant contends the trial court "set out a punishing schedule" for everyone. Appellant argues that during *voir dire* counsel brought it to the attention of the court that his client was tired from long hours. He likewise cited the record where trial counsel's assistant advised the trial court that it was difficult for him to function when he constantly had to keep appellant awake and that the jury observed appellant dozing. Appellant further asserts that the trial court went too long on the last day when final argument on the penalty phase began at 10:00 p.m. We do not perceive that this case differs from *King* and hold that there is no error.

Appellant claims the trial court erred in permitting death qualification of the jury and refusing to provide for two juries, one for each phase of the trial.

■■ Appellant contends that death qualification is unconstitutional for two separate reasons:

1. death qualified juries are unduly guilt-prone and prosecution-prone and
2. the procedure of death qualifying a trial jury infringes upon rights to a fair trial.

To support his position, appellant cites numerous studies. Appellant's claim fails be-cause death qualification has been allowed within constitutional limits as seen in *Witherspoon.* Appellant's claim that a separate jury should be impaneled for each stage of a death penalty case is contrary to our statute, Ind.Code § 35–50–2–9. We find no error.

■■ Appellant contends he was denied a fair trial when the trial court overruled his motion for change of venue based upon prejudicial pretrial publicity and publicity regarding the parole of another offender.

■■■ In order to establish the trial court's abuse of discretion in denying a motion for change of venue, the defendant must show prejudicial pretrial publicity and juror inability to render an impartial verdict on the evidence. *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386. Prejudicial publicity is that which contains inflammatory material which would not be admissible at trial or contain misstatements or distortions of the evidence given at trial. *Moore v. State* (1987), Ind., 515 N.E.2d 1099.

Appellant claims his change of venue should have been granted because the prospective jurors were tainted by publicity describing the crime and the fact that he was a previously convicted felon out on parole during a period when the community was exposed to media coverage of the Gertrude Baniszewski parole hearings. Appellant also cites decisions from other jurisdictions to support his claim that the trial court should have granted the change of venue under the standards of "realistic likelihood" of prejudice from pretrial publicity or when it is "doubtful" that a fair and impartial jury can be impaneled. *See State v. Williams* (1983), 93 N.J. 39, 459 A.2d 641 and *Fisher v. State* (1985), Miss., 481 So.2d 203. Appellant however has failed to show that the jurors were unable to render an impartial verdict on the evidence. We find appellant's reliance on *Williams* and *Fisher* misplaced.

■■ Appellant complains the trial court erred in denying his motion to suppress statements made by him which were not given in a voluntary and knowing manner.

Appellant argues that he was too intoxicated to make a voluntary statement.

■■■■ The State carries the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his right and the confession was voluntarily given. *Jackson v. State* (1980), 274 Ind. 297, 411 N.E.2d 609. In determining whether a statement was voluntarily given, we consider the surrounding circumstances. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. In viewing the voluntariness of a confession, we do not weigh the evidence, and if there is sufficient evidence to support the trial court, we will not disturb the ruling of admissibility. *Turner v. State* (1980), 273 Ind. 627, 407 N.E.2d 235.

The record in the instant case reveals that during the motion to suppress hearing, Officer Malcolm Smith testified that in his opinion appellant was intoxicated. However, Officer Malcolm Reardon testified that appellant did not have a problem with his balance and appeared to be coherent during his statement. Appellant himself testified that he drank two one-half pint bottles of Old Grand Dad with the victim between 8:00 p.m. and 1:00 a.m. immediately prior to his arrest. We find there is sufficient evidence in this record to support the decision of the trial court to deny appellant's motion to suppress.

■■■■ Appellant next contends the trial court erred in failing to strike the surplusage contained in the amended information for the death sentence thereby creating an impression for the jury that the aggravating circumstances outweighed the mitigating circumstances and in that aggravating circumstances along with the request for the death penalty were not placed on a separate page.

In *Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384, after examining Ind.Code § 35-50-2-9(a), we found that a difference existed between the bifurcation of a habitual offender charge and a death penalty charge. Of course, in a habitual offender charge, the prior felonies are always separate and a defendant is entitled to be shielded from the fact of prior convictions until his instant case is decided. However, in a death penalty case, it is only under certain circumstances that prior unrelated crimes are necessary to invoke the death penalty. In those cases, it is necessary that the information of prior crimes be withheld from the jury until the instant case is decided. However, in other instances, such as the case at bar, it is the very nature of the instant crime that makes the death penalty applicable. It is of course impossible in such an instance to separate the facts of the crime from the instant trial.

In the case at bar, the facts necessary to describe the primary charges of necessity also describe those elements which bring appellant's acts within the death penalty provisions. It is not a case where the enhancing facts are severable from the instant acts. We find no error in the manner in which this case was handled.

■■■■ Appellant contends the trial court erred in refusing to grant his motion for statement of legal standards and findings of fact to support the order excusing prospective jurors for cause on their opposition to the death penalty.

Appellant contends that *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 requires the court to indicate the legal standard it applied and to enter into the record findings resolving the essential issues of fact raised by his objection to challenges for cause of prospective jurors. Without such findings, appellant contends that his right to due process was violated. However, as the State properly notes, the Supreme Court in *Wainwright* said: "[W]here the record does not indicate the standard applied by a state trial judge, he is presumed to have applied the correct one." *Id.* at 431, 105 S.Ct. at 856, 83 L.Ed.2d at 856. In the instant case, the trial judge stated with respect to juror Allington, that he followed the standard of *Witherspoon* and indicated the facts on which he relied. We find appellant's contention without merit.

■ Appellant claims the trial court erred in denying his motion to increase challenges for individual *voir dire*, sequestration of jurors during *voir dire*, and sequestration upon selection.

The record shows the trial court granted appellant's motion for sequestration upon selection but denied the other motions. Appellant asserts the trial court should have granted his motion to increase the number of peremptory challenges for three reasons: 1) death cases require a higher standard of due process than any other case; 2) this unique standard also applies to the sentencing phase of the trial; and 3) this standard is constantly evolving to higher levels as our society evolves. Appellant contends that an increase in the number of peremptory challenges would have increased the chances for him receiving a fair trial.

Our legislature already has provided that death penalty cases are entitled to extra peremptory challenges by allowing both the prosecution and a defendant twenty peremptory challenges rather than ten peremptory challenges as in other felony cases. *See* Ind.Code § 35–37–1–3. A trial court has broad discretion in controlling *voir dire*. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. In *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied* (1986), 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349, the defendant raised a similar claim as in the instant case claiming that the trial court should have granted his motion for additional peremptory challenges. In *Bieghler*, we said that the trial court has broad discretion in controlling *voir dire* and found that there was no showing that the trial court there abused its discretion in the manner in which it controlled *voir dire*. We find no error in the instant case.

■ As to appellant's contention that the trial court erred in failing to individually *voir dire* jurors, this Court in *Smith v. State* (1984), Ind., 465 N.E.2d 1105 said:

"There is no right, accorded to a defendant to have each juror separately sequestered and questioned outside the presence of the other jurors. In fact, our general procedure in the conduct of trials is to the contrary. The trial court has broad discretion in regulating the form and substance of *voir dire* and this discretion will not be reviewed absent a clear showing of abuse of discretion." (Citations omitted.) *Id.* at 1115

*See also, Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied* (1987), 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 and *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. The record in the instant case does not reveal that appellant was prejudiced in any way by the manner in which the *voir dire* was conducted. We find no error.

■ Appellant contends the trial court erred in refusing to give numerous instructions claiming that they were correct statements of the law and were not covered by the court's instructions.

While appellant in his brief claims numerous instances where the court refused to give an instruction and instead gave another, we note that he actually only complains about one particular instruction and urges that his instruction should have been given. He contends that the court's instruction was unreasonably misleading and failed to provide jurors with a full understanding of how the weight of the evidence between experts and lay witnesses should be handled. To support his position, he cites *Sceifers v. State* (1978), 267 Ind. 687, 373 N.E.2d 131, *cert. denied*, 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187, as holding that opinion evidence even by lay witnesses is admissible in Indiana. Appellant's reliance on *Sceifers* is misplaced because the instruction complained of involved the testimony of experts as to appellant's mental capacity. The court's instruction was a correct statement of the law and did not differ substantially from appellant's tendered instruction on the same subject. We find no error in the giving of the trial court's instruction or the refusal of appellant's tendered instruction.

■ Appellant contends the trial court erred in allowing the testimony of Dr. Dean Hawley because he had no indepen-

dent recollection of his autopsy of the decedent.

In support of appellant's claim, he cites *Wilson v. State* (1987), Ind., 511 N.E.2d 1014 where we stated that a written memorandum may be used to refresh the recollection of a forgetful witness, but the memorandum may not be substituted for the memory of the witness. Appellant contends that Dr. Hawley had no recollection and thus should not have testified. However, the record reveals that Dr. Hawley in fact did testify that his recollection was refreshed. We find no error.

Appellant contends the trial court erred in allowing the testimony of two officers without a showing of a voluntary and intelligent waiver and before the State had established the *corpus delecti* of the offense of rape.

Appellant claims that the testimony of Officers Reardon and Smith regarding his statements made while in custody should have been excluded. He contends that he was too intoxicated to have made a knowing and intelligent waiver of his rights. The record in this case reveals that the officers testified that immediately after the crime when the officers conversed with appellant that he knew exactly where he was, that he knew where the body was, that he talked lucidly and gave no physical signs of intoxication with the exceptions of the smell of liquor on his breath, and that he was immediately given his *Miranda* rights and indicated he understood them before he made his incriminating statements to the police.

As this Court stated in *Chamness v. State* (1982), Ind., 431 N.E.2d 474, "In our review of a trial court's ruling on the admissibility of an out-of-court admission or statement, the issue remains a question of fact. We do not weigh the evidence nor judge the credibility of witnesses." *Id.* at 476. Appellant's claim that the trial court erred in allowing the testimony of these officers is without merit. Both officers testified that *Miranda* warnings were given before interrogation. The trial judge was justified in allowing the testimony.

Appellant claims that there was no *corpus delecti* for the crime of rape. Under Indiana law, in order for a defendant's confession to be admitted during trial, the State must introduce evidence to establish the *corpus delecti*. In doing so, however, the State is not required to prove the *corpus delecti* beyond a reasonable doubt and it may be satisfied by circumstantial evidence. *Swafford v. State* (1981), Ind., 421 N.E.2d 596. The record in the instant case reveals that the decedent's body was found nude except for a shirt pulled up around her shoulders and the victim's clothing was scattered over a large area as was shown by photographs admitted at trial. However, the State submitted no evidence of penetration to establish a rape. Nevertheless the rape was described in detail by the appellant in his testimony at trial. The rule against using a confession without independent proof of the *corpus delecti* applies to extrajudicial confession. *See Parker v. State* (1949), 228 Ind. 1, 88 N.E.2d 556, *pet. reh'g.*, 228 Ind. 1, 89 N.E.2d 442 and the many cases that have followed *Parker*. Here, in contrast, the rape is established by appellant's own judicial statement.

Appellant contends the court erred by allowing the court appointed psychiatrists to testify regarding previous examinations of appellant thereby placing before the jury his previous criminal history. Before trial, appellant filed a "Motion For Psychiatric Examination And Notice of Intent To Interpose Insanity Defense." Thus all relevant evidence is deemed admissible including appellant's past criminal conduct. *Wood v. State* (1987), Ind., 512 N.E.2d 1094. There was no error in permitting the testimony of the doctors.

Appellant complains the trial court committed fundamental error by instructing the jury that it must "first determine the guilt or innocence" of the appellant.

Appellant contends this instruction relieved the State of its burden of proof beyond a reasonable doubt thereby shifting the burden of proof to him and thus depriving him of due process.

 Fundamental error is error that if not corrected would deny a defendant fundamental due process. *Haymaker v. State* (1988), Ind., 528 N.E.2d 83. In the instant case, the trial court gave the following instruction:

"You must first determine the guilt or innocence of the defendant, and if you have reasonable doubt as to guilt of the crimes charged, then you should find the defendant not guilty.

However, if you find that the State has proven beyond reasonable doubt the material allegations of the charges against the defendant, then you should find the defendant guilty. Proper verdict forms will be furnished you for your use; furthermore, your sole responsibility is to determine innocence or guilt herein, and should there be a finding of guilty, sentencing responsibility is that of the trial judge alone."

The trial court also gave the following instruction on presumption of innocence:

"The law presumes the defendant to be innocent of the crime charged, and this presumption continues in his favor throughout the trial of this cause.

It is your duty, if it can be reasonably and conscientiously done to reconcile the evidence upon the theory that the defendant is innocent, and you cannot find the defendant guilty of the crime charged in the affidavit unless the evidence satisfies you beyond a reasonable doubt of his guilt."

This Court has approved similar instructions. *See Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236 and *Taylor v. State* (1981), Ind., 420 N.E.2d 1231. We note that the record is void of any objection by appellant on this instruction and therefore the error is waived. Thus the question is whether there is fundamental error. We note that there is no showing in the record that appellant could not have had a fair trial nor does he indicate why this amounted to fundamental error. We find that this did not amount to fundamental error.

 Appellant argues the trial court erred by denying his motion in limine and objections to remarks by the State in final arguments relative to public approval involving the death penalty thereby violating his Eighth and Fourteenth Amendment rights.

In support of appellant's position, he cites numerous cases which he contends are supportive of this issue. However, in reviewing those cited cases, we find they are not supportive. In one instance the prosecutor referred to facts that the legislature passed the law and that the governor had signed this law. This was not going to public opinion but instead explains to the jury that the death penalty is allowed under the laws of this state. Another instance reveals that the prosecutor explained that the death penalty was part of a judicial system which can work. Again, this was not a direct appeal to public opinion. Finally, the prosecutor quotes from a work of literature that, "[M]urderers are hung with the hearty approval of all reasonable men." As to this last statement, the record here is void of any objection by defense counsel and therefore it is waived. *Brooke v. State* (1987), Ind., 516 N.E.2d 9.

 Appellant contends the trial court erred by refusing to inform the jury during *voir dire* or in final instructions as to penalties available in the event of a non death sentence.

In appellant's brief, we note that he cites our decision in *Wisehart v. State* (1985), Ind., 484 N.E.2d 949, *cert. denied* (1986), 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556. In *Wisehart*, this Court stated:

"Inasmuch as the jury in a felony case has no sentencing function it should not be informed as to the range of sentences possible. In a death penalty case, the jury has a limited function to recommend whether or not capital punishment is appropriate in its opinion and after having found the defendant guilty of murder. The trial court therefore did not err in providing that the jury would not be advised and questioned concerning the terms of years to which Defendant could be sentenced were he to be found guilty of any of the crimes with which he was

charged." (Citations omitted.) *Id.* at 953.

*See also Burris, supra.* We find no error.

◼ Appellant contends it was improper for the presentence report to contain a statement by the victim's mother urging the death penalty, citing *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440.

In *Booth,* the defendant was convicted of two counts of capital murder. The jury sentenced him to death after considering a presentence report prepared by the State. Under Maryland statute, Md.Ann.Code of 1986, Art. 41, § 4–609(c), there is provision for the preparation of a victim impact statement addressing the impact of the crime upon the victim's family. In *Booth,* the opinions of the victim's family were read to the jurors as required by this statute. The issue presented was whether the Constitution prohibits a jury from considering a "victim impact statement" during the sentencing phase of a capital murder trial.

The United States Supreme Court held that the admission of such evidence in a jury situation "creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Id.* at 503, 107 S.Ct. at 2533, 96 L.Ed.2d at 448. In deciding *Booth,* the Supreme Court found that the introduction of a victim impact statement violated the Eighth Amendment and held that the Maryland statute was invalid.

Unlike *Booth,* where the jury was presented with the victim impact statement, the presentence report in the instant case was presented *only* to the trial judge. Under the law of this jurisdiction, it is for the trial judge to determine the penalty and not the jury. Recently, the Arizona Supreme Court was confronted with a similar issue. *See State v. Beaty* (1988), 158 Ariz. 232, 762 P.2d 519, *cert. denied* (1989), —— U.S. ——, 109 S.Ct. 3200, 105 L.Ed.2d 708. In *Beaty,* the Arizona Supreme Court distinguished the decision of *Booth.* They held that where the judge was to make the ultimate decision *Booth* did not apply, and absent proof to the contrary it must be presumed that a trial judge is able to focus on the relevant sentencing factors and to set aside irrelevant or inflammatory factors. *See also State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, *cert. denied* (1988), 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023. We find the reasoning in *Beaty* to be applicable in the instant case and do not believe *Booth* applies. We find no error.

◼ Appellant contends the trial court erred in its refusal to grant his motion for a directed verdict on Counts II and III for rape.

Appellant's view is that absent the videotaped confession and the statements made to Officer Smith, there was no independent evidence that the first or second rape had occurred. However, as we discussed above, the confession and the testimony were properly admissible in evidence; thus there was sufficient proof of the *corpus delecti* for the rape charges against appellant. We find no error.

◼ Appellant asserts that the trial court improperly admitted into evidence numerous gruesome photographs of the decedent over trial counsel's objections.

◼ The admission of photographs in evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Dickson v. State* (1988), Ind., 520 N.E.2d 101. Photographs of a victim's corpse in a homicide case are relevant to prove the identity of the victim and as an aid to understanding the pathologist's findings on the cause of death. *Brown v. State* (1987), Ind., 503 N.E.2d 405. This is true with regard to photographs showing the victim in his or her natural state following death and before the body has been altered by an autopsy. *Loy v. State* (1982), Ind., 436 N.E.2d 1125.

In the instant case, the State introduced five photographs which were used by the pathologist in explaining his testimony. We find this to be the purpose of using photographs. We find no error in admitting these photographs into evidence.

◼ Appellant claims Exhibit 37, a photograph of the victim, was admitted only to

incite the passions of the jury. The picture of the victim was taken two years prior to the crime. We fail to find that the admission of the photograph was improper nor do we find that it was used only to incite the passions of the jury. We find no error.

Appellant contends the death penalty statute is constitutionally infirm in many different respects.

 He claims the statute fails to provide sufficient guidance to the sentencer concerning who has the burden of proving whether the aggravation outweighs the mitigation and what the standard of proof the sentencer should use. However, this Court in *Williams v. State* (1982), Ind., 430 N.E.2d 759, *cert. denied,* 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47, in addressing a similar claim, reviewed the requirements of the statute that the death penalty phase of the trial be bifurcated, the requirements which must be met before a jury can recommend the death penalty, and the standards upon which the trial judge must base his decision. We further observe that every sentence is subject to automatic review by this Court. We held that the statute adequately protects the individuals constitutional rights. We cannot agree with appellant in his contentions.

 Appellant contends the sentencing scheme limits the sentencer's discretion to exercise mercy. As the State indicates, a similar issue was raised and was rejected in *Canaan v. State* (1989), Ind., 541 N.E.2d 894. We do not find appellant's position to be valid in that our statute specifically provides for the standard to be applied and the different processes which are used before a death sentence can be imposed.

 Appellant argues that the statute is unconstitutional because it allows a judge to override a jury's recommendation. A similar issue was raised in *Games, supra.* In *Games,* we said the defendant was not in a position to raise that issue because the jury had recommended the death sentence. We also observed that the Supreme Court of the United States has decided this issue adversely to the defendant's position, citing *Spaziano v. Florida* (1984), 468 U.S.

447, 104 S.Ct. 3154, 82 L.Ed.2d 340. We find the statute to be constitutional.

 Appellant claims the prosecuting attorney is given overbroad discretion in seeking the death penalty and that the sentencing scheme fails to accord a death-sentenced inmate with meaningful appellate review. This Court in *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, *cert. denied* (1988), 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158, adequately covered these issues. We find no error.

 Appellant claims the death penalty statute is unconstitutional because it allows the State to have the final argument at the death penalty phase. Appellant here fails to note that it is the burden of the State in showing that aggravating circumstances exist beyond a reasonable doubt and that the jury is so instructed. Under *Fleenor, supra,* the weighing is a balancing process upon which the trial court makes the ultimate decision. Appellant fails to show resulting prejudice in this procedure. We find no error.

 Appellant claims the death penalty is not a deterrent to future crimes and that it results in the gratuitous infliction of suffering. Appellant's position fails to note that it is the legislature in this State which takes into account a policy judgment such as this. It is not for this Court to decide policy. This Court has stated that our death penalty is not cruel and unusual. *See Fleenor.* We find appellant's position to be without merit.

 Appellant claims that Indiana's capital sentencing scheme results in the arbitrary and discriminatory application of the death penalty. This Court in *Wisehart, supra* specifically rejected this contention. We find no error.

The trial court is affirmed.

PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs and dissents with separate opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, concurring and dissenting.

After abusing and killing the victim, appellant cut her hair and applied cosmetics to her face. He then walked to a nearby phone booth and called police, waiting at the phone booth until they arrived. He was taken into custody and gave a full confession. By immediately reporting his own crime, he effectively removed himself as a dangerous threat to the community. This conduct is entitled to substantial mitigating weight in the process of determining whether the death penalty should be given, and was not.

Appellant's personal history is punctuated by events involving verbal threats towards the opposite sex and attempted attacks, followed by conduct insuring his arrest. He had previously also demanded arrest, had been charged with threatening to rape a member of the police force, and had grabbed two women in the federal court house. On the night of the crime, according to the manager of the bar visited by appellant and the victim, appellant was filthy and unkempt and didn't look as if "he was all there." In appellant's medical records he is termed:

a) anti-social

b) psychopathic

c) with a personality disorder

d) having a chaotic fantasy life

e) severe personality disorder

f) suicidal

It is apparent from the record that appellant suffered from an extreme emotional disturbance when he killed, which arose as the product of a long-standing disorder. This also was entitled to substantial mitigating weight in the process of determining whether the death penalty should be given, but was not. When the weight of these additional mitigators is added to the mitigator found by the trial judge, the weight of the aggravator here does not preponderate. I would affirm the convictions, but set aside this death sentence and order that a sentence of sixty-years be given in lieu thereof.

SHEPARD, C.J., concurs.